UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODNEY MAYBERRY,

    Plaintiff,

v.

CITY OF ANN ARBOR, MICHAEL
FECHIK, and MARK KELSO,

    Defendants.
_____/

Case No. 16-14063
HON. DENISE PAGE HOOD

**ORDER DENYING DEFENDANTS'
MOTION TO DISMISS [#9]**

## I. INTRODUCTION

Plaintiff Rodney Mayberry filed this 42 U.S.C. § 1983 action on November 16, 2017, alleging that Defendants violated his constitutional rights when they unreasonably seized him, searched his vehicle, and ticketed him after falsely claiming that he was driving on a suspended license. Plaintiff amended his complaint on January 6, 2017 (the "Complaint"). [Dkt. No. 3] On March 16, 2107, Defendants filed a Rule 12(c) Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted ("Motion to Dismiss"). [Dkt. No. 9] The Motion to Dismiss was fully briefed, and the Court held a hearing regarding the Motion to Dismiss on July 12, 2017.

1

For the reasons that follow, the Court denies Defendants' Motion to Dismiss.

## II. BACKGROUND

On November 16, 2014, Defendants Michael Fechik and Mark Kelso, both of whom were City of Ann Arbor (the "City") police officers, made a traffic stop of Plaintiff. When Plaintiff asked Defendant Fechik why Plaintiff had been stopped, Defendant Fechik stated that Plaintiff was stopped because Plaintiff's vehicle had tinted windows. [Dkt. No. 3, ¶ 16] Defendant Kelso opened the back door of Plaintiff's vehicle, without notice or consent. *Id.* at ¶ 17. When Plaintiff inquired why Defendant Kelso did so, Defendant Kelso stated that he was making sure nobody was pointing a gun at him. *Id.* Defendant Kelso closed the back door after Plaintiff asked him a second time what Defendant Kelso was doing. *Id.* at ¶ 18. Defendant Kelso then asked Plaintiff to roll down his back window. *Id.* Plaintiff complied with Defendant Kelso's request and rolled down the back window. *Id.* at ¶ 19. Plaintiff alleges the rolled down window enabled Defendant Kelso to look into Plaintiff's car. *Id.*

At that point, Defendant Fechik asked Plaintiff's permission to search the vehicle, but Plaintiff declined to give that consent. *Id.* at ¶ 20. Defendant Fechik then told Plaintiff that Defendant Fechik did not care if there was weed in the car, as Defendant Fechik "was looking for weapons and hard drugs." *Id.* at ¶ 21. Plaintiff

2

again refused to give consent to search his vehicle. *Id.* at ¶ 22. Defendants Kelso and Fechik walked back to their police vehicle and when they returned to talk to Plaintiff, they advised Plaintiff that his driver license was suspended. *Id.* at ¶¶ 23-24. Defendant Fechik asked Plaintiff a third time for permission to search the car. *Id.* at ¶ 25. Plaintiff denied consent to search his car for a third time and stated that he did nothing wrong because his license was not suspended. *Id.*

After Plaintiff denied consent to search the vehicle for a third time, Defendant Fechik allegedly replied, "I tried to give you a break and you wouldn't cooperate" before ordering Plaintiff to get out of the vehicle. *Id.* at ¶¶ 26-27. Plaintiff got out of the vehicle, was handcuffed, and was seated on the ground. *Id.* at ¶¶ 28-29. Defendants Fechik and Kelso then began searching Plaintiff's vehicle based on Plaintiff's allegedly suspended license. *Id.* at ¶ 30. When a third City of Ann Arbor police officer (Defendant John Doe) arrived, Defendant Fechik advised Defendant Doe to continue searching the vehicle while Defendant Fechik wrote the ticket. *Id.* at ¶ 37. When Plaintiff asked why a tow truck was there to take his vehicle, Defendant Kelso allegedly stated to Plaintiff, "you want to be an asshole, I can be one to[o]." *Id.* at ¶ 38. After the search of Plaintiff's vehicle was complete (and no contraband was found) and Plaintiff's vehicle was towed, Defendant Fechik removed the handcuffs

from Plaintiff, handed Plaintiff the ticket, and told Plaintiff that he was lucky he did not get arrested. *Id.* at ¶ 40.

Plaintiff twice went to court regarding the ticket before the ticket was dismissed because there was no record of Plaintiff's license being suspended on November 16, 2014. *Id.* at ¶ 42. Plaintiff filed a formal complaint with the City, wherein he: (1) complained of Defendants Fechik's and Kelso's conduct at the time of his arrest; and (2) sought reimbursement for the costs and damages incurred in conjunction with getting his car out of towing and damages to his dashboard and other parts of his car. *Id.* at ¶ 43. Plaintiff was reimbursed for the tow cost, but he did not receive any reimbursement for damage to his vehicle or any information regarding discipline or actions taken regarding Defendants Fechik and Kelso. *Id.* at ¶ 44.

Plaintiff's seven-count Complaint includes the following claims: (1) unreasonable search and seizure in violation of the Fourth Amendment; (2) malicious prosecution under the Fourth Amendment; (3) malicious prosecution under Michigan law; (4) unlawful detention in violation of the Fourth Amendment; (5) intentional infliction of emotional distress under Michigan law; (6) gross negligence under Michigan law; and (7) a *Monell* claim pursuant to Section 1983. The first six claims are against Defendants Fechik, Kelso, and Doe, and the *Monell* claim is against the City.

## III. APPLICABLE LAW & ANALYSIS

### A. Rule 12(c)

In deciding a motion brought pursuant to Rule 12(c), the standard is the same as that used in evaluating a motion brought under Fed.Civ.P. 12(b)(6). *See, e.g., Stein v U.S. Bancorp, et. al*, 2011 U.S. Dist. LEXIS 18357, at *9 (E.D. Mich. February 24, 2011). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. The Court must accept all well-pleaded factual allegations as true and review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007); *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B.     Qualified Immunity**

As recently stated by the Supreme Court:

The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citations and quotation marks omitted).

Qualified immunity is a two-step process. *Saucier v. Katz*, 533 U.S. 194 (2001). First, the Court determines whether, based upon the applicable law, the facts viewed in a light most favorable to the plaintiff show that a constitutional violation has occurred. Second, the Court considers whether the violation involved a clearly established constitutional right of which a reasonable person would have known. *Saucier v. Katz, supra.*; *Sample v. Bailey*, 409 F.3d 689 (6th Cir. 2005). Only if the undisputed facts, or the evidence viewed in a light most favorable to the plaintiff, fail to establish a prima facie violation of clear constitutional law can this court find that the defendants are entitled to qualified immunity. *Turner v. Scott*, 119 F.3d 425, 428 (6th Cir. 1997).

Once a government official has raised the defense of qualified immunity, the plaintiff "bears the ultimate burden of proof to show that the individual officers are

6

not entitled to qualified immunity." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012) (citation omitted). A plaintiff also must establish that each individual defendant was "personally involved" in the specific constitutional violation. *See Salehphour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998); *Bennett v. Schroeder*, 99 F. App'x 707, 712-13 (6th Cir. 2004) (unpublished) ("It is well-settled that to state a cognizable Section 1983 claim, the plaintiff must allege some personal involvement by the each of the named defendants").

## IV. ANALYSIS

Defendants contend they are entitled to qualified immunity on all claims because Plaintiff's allegations do not amount to a violation of a clearly established constitutional right that is actionable pursuant to 42 U.S.C. § 1983. Defendants' argument is based on the premise that the Defendants honestly, albeit erroneously, believed that Plaintiff's license was suspended on November 16, 2014, the day of the traffic stop. Defendants argue that, in reviewing the results of a "customary roadside LEIN investigation," they made a mistake because Plaintiff had multiple license suspensions prior to that date.

Defendants' argument likely would entitle them to qualified immunity if there was nothing more. But, for purposes of a Rule 12(c) motion, the Court must not rely simply on Defendants' stated beliefs about the circumstances. The Court must look

7

to the allegations of Plaintiff's Complaint, and Defendants' arguments ignore numerous allegations set forth in the Complaint. Most significantly, Plaintiff alleges that Defendants came up with the "driving with suspended license" charge only after Plaintiff twice refused to consent to a search of his car. Plaintiff also alleges that, after Defendants first falsely claimed that Plaintiff's driver license was suspended: (1) Defendant Fechik stated, "I tried to give you a break and you wouldn't cooperate;" and (2) Defendant Kelso said to Plaintiff, "you want to be an asshole, I can be one to[o]" (hereinafter, these two comments shall be referred to as "Defendants' Comments").

**A.    Roadside Detention - Counts I and IV**

Defendants accurately note that Plaintiff does not plead that the basis for the traffic stop (the tinted windows on his vehicle) was improper or that Defendants lacked probable cause for stopping Plaintiff's vehicle. Defendants state that Plaintiff appears to be arguing that his "brief" roadside detention during the traffic investigation was an "arrest" without probable cause. A roadside detention is lawful so long as the officer has probable cause to believe that the motorist has violated the traffic laws. *United States v. Burton*, 334 F.3d 514, 516 (6th Cir. 2003) ("The Fourth Amendment . . . permits an officer who has probable cause to believe that a traffic violation is occurring to detain the automobile, regardless of the officer's subjective

8

motivation for the stop."). Defendants' argument ignores that the Complaint is not limited to, nor does it focus on, the detention of Plaintiff's vehicle. The Complaint centers on the fact that Defendants detained Plaintiff in handcuffs and confiscated his vehicle.

Defendants argue that a "valid arrest based upon then-existing probable cause is not vitiated if the suspect is later found innocent." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988); *Kinlin v. Kline*, 749 F.3d 573, 578 (6th Cir. 2014). This argument is inadequate because it fails to take into account that the issue before the Court is whether there was probable cause to arrest Plaintiff. For the same reason, Defendants are mistaken when they contend that the Court must consider only the arresting officer's subjective knowledge of the facts at the time of the arrest, even if it is later known that some of the officer's beliefs were mistaken. *Klein v. Long*, 275 F.3d 544, 549-50 (6th Cir. 2001); *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949) (the probable cause standard allows for mistakes if they are objectively reasonable under the circumstances).

The circumstances surrounding the assertion by Defendants Fechik and Kelso that Plaintiff was driving on a suspended sentence create a genuine dispute of material fact as to whether they had reason to believe – or even believed – that Plaintiff's license was suspended at the time of the stop. Specifically, Defendants' Comments,

together with Plaintiff's refusal to consent to a search of his vehicle, create a genuine dispute of material fact regarding Defendants Fechik's and Kelso's motivation for searching Plaintiff's vehicle, possibly undermining their asserted "honest belief" that Plaintiff's license was suspended. Based on those circumstances. a reasonable fact finder could conclude that Defendant Fechik and Kelso made up that claim to form a probable cause basis upon which they could justify ordering Plaintiff out of his vehicle and conduct an inventory search of the vehicle – after Plaintiff repeatedly had refused to allow a search of his vehicle.

Defendants contend, "'A [police officer] is entitled to qualified immunity' on a false arrest and false imprisonment claim 'if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the [police officer].'" *Kennedy v. City of Vila Hills*, 635 F.3d 210, 214 (6th Cir. 2011). Defendants do not contemplate or address the fact that Plaintiff's allegations challenge that Defendants Fechik and Kelso "could reasonably . . . have believed that the arrest was lawful[.]" *Id.* Plaintiff pleads that no reasonable officer could have believed that his license was suspended because the LEIN investigation report reflects otherwise. Plaintiff also pleads that Defendants Fechik and Kelso were motivated to search Plaintiff's car one way or

another, as evidenced by Defendants' Comments after Plaintiff repeatedly refused to consent to a search of his vehicle.

Defendants assert the impoundment of the vehicle was legal. Under existing law, their argument is accurate – if the driver has a suspended license (or, even if Defendants in good faith believed the driver had a suspended license). *See, e.g., United States v. Ballard*, 432 F. App'x 553, 556-57 (6th Cir. 2011); *United States v. Rose*, 1993 WL 539248, at **1, 3 (6 th Cir. Dec. 29, 1993). For the reasons stated above, this analysis only applies if the Court accepts as true the assertion by Defendants that Defendants Fechik and Kelso had a good faith belief that Plaintiff's license was suspended on November 16, 2014.

Defendants also suggest that they had the right to detain Plaintiff for a short time for investigatory purposes because, under the totality of the circumstances, they had "reasonable suspicion" or "a particularized and objective basis for suspecting the particular person [Plaintiff] . . . of criminal activity based on specific and articulable facts." *Hoover v. Walsh*, 682 F.3d 481, 494 (6th Cir. 2012). "[T]he degree of intrusion into the suspect's personal security [must be] reasonably related in scope to the situation at hand." *Smoak v. Hall*, 460 F.3d 768, 779 (6th Cir. 2006); *Houston v. Clark Cty. Sheriff Deputy John Does 1-5*, 174 F.3d 809, 814 (6th Cir. 1999) (if the "length and manner" of the stop, including any force used, are not "reasonably related

to the basis for the initial intrusion," then the stop ripens into an arrest for which the officers must show probable cause).

Defendants argue that Plaintiff's detention never ripened into an arrest, as the detention was brief and only for the period of time necessary to impound the vehicle. Defendants further state that Plaintiff was released from the scene of the traffic stop, even though he <u>could</u> have been arrested, transported and fingerprinted. Again, Defendants rely on their position that they, honestly and in good faith, believed Plaintiff's license was suspended. Ironically, in making this argument, Defendants identify one of the key allegations in the Complaint that precludes a finding of qualified immunity or demonstrates why their motion to dismiss must be denied. Defendants states:

> In Paragraph 49 of his Complaint, Plaintiff alleges that: *"Defendants then made up a lie and falsely claimed that Plaintiff was driving on a suspended license . . ."*

[Dkt. No. 9, PgID 84]

Defendants suggest that the Court should discard Plaintiff's allegations because Plaintiff offers no facts to support this conclusory claim that Defendants deliberately lied about Plaintiff's license being suspended. Defendants ignore that Plaintiff alleged the following facts, each of which supports his claim that Defendants deliberately lied about the suspension of his license: (1) after the incident, Plaintiff confirmed with the

Michigan Department of State Bureau of Branch Office Services that his license was not suspended when he was stopped on November 16, 2014 (Complaint at ¶ 24); (2) on November 26, 2014, he obtained documentation from the Michigan Department of State Bureau of Branch Office Services that his license was not suspended (*Id.*); (3) Defendant Fechik said to Plaintiff: "I tried to give you a break and you wouldn't cooperate" and then ordered Plaintiff to get out of the vehicle (Complaint at ¶¶ 26-27); and (4) Defendant Kelso stated to Plaintiff, "you want to be an asshole, I can be one to[o]." (Complaint at ¶ 38).

Exhibit 1 to Defendants' Motion to Dismiss further supports Plaintiff's claim that Defendants deliberately lied about the suspension of his license on November 16, 2014. In Exhibit 1 (the LEIN investigation report), the Court notes that immediately below each of the four places that the report identifies a driver license "SUSPENSION," there is the following terminology: "SUSP TERMINATED." [Dkt. No. 9-2, PgID 97] Contrary to Defendants' argument, the foregoing allegations exhibit possible motivation of – and overt acts taken by – Defendants that establish an intent to deceive Plaintiff about his license being suspended.[1]

---

[1] None of this takes into consideration that the Defendant officers presumably are trained to be able to accurately read a LEIN investigation report so that citizens are not detained or arrested in violation of their constitutional rights. Defendants' contention that the officers' "mistake was understandable in light of four prior instances of suspension and many convictions . . ." is puzzling, in that it suggests that police officers should be excused from having to be able to read and understand the LEIN investigation reports.

As Defendants acknowledge, "those who knowingly violate the law" are not afforded the protections of qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Plaintiff has alleged that Defendants' Fechik and Kelso have knowingly violated the law. The Court concludes that Defendants Fechik and Kelso are not entitled to qualified immunity because their alleged conduct (fabricating that Plaintiff's driver license was suspended) would violate a clearly established constitutional right of which a reasonable officer would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The Court denies the Motion to Dismiss with respect to Counts I and IV.

**B.     Malicious Prosecution - Counts II and III**

To establish a malicious prosecution claim under the Fourth Amendment, Plaintiff must show: (1) a criminal prosecution was initiated against him and Defendants made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the prosecution; (3) as a consequence of the legal proceeding, Plaintiff suffered a deprivation of liberty, apart from the initial seizure; and (4) the criminal proceeding was resolved in Plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010).

Under Michigan law, to support a malicious prosecution claim, Plaintiff "must show an absence of probable cause, and he must show 'malice.'" *Newman v. Twp. of*

14

*Hamburg*, 773 F.3d 769, 773 (6th Cir. 2014) (quoting *Matthews v. Blue Cross & Blue Shield of Mich.*, 572 N.W.3d 603, 609-10 (Mich. 1998)). Malice requires "evidence that the officer 'knowingly sw[ore] to false facts ... without which there is no probable cause." *Id*. (quoting *Payton v. City of Detroit*, 536 N.W.2d 233, 242 (Mich. 1995)). It is more demanding than establishing mere recklessness. *Joy v. Godair*, No. 1:16-CV-187, 2016 WL 7334837, at *5 (W.D. Mich. Dec. 19, 2016).

Under Michigan law, Defendants would be entitled to governmental immunity if:

(a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed he was acting, within the scope of his authority,
(b) The acts were undertaken in good faith, or were not undertaken with malice, and
(c) The acts were discretionary as opposed to ministerial.

*Odom v. Wayne Cty.*, 482 Mich. 459, 480 (2008).

For the reasons stated above, the Court finds that Plaintiff has alleged that Defendants Fechik and Kelso had malice and acted in bad faith because they knowingly fabricated a traffic offense, swore to false facts and, absent those falsifications, they lacked probable cause to detain and ticket Plaintiff for driving with a suspended license. The Court denies Defendants' Motion to Dismiss as it relates to Plaintiff's malicious prosecution claims at Counts II and III of his Complaint.

**C.** **Intentional Infliction of Emotional Distress - Count V**

In Michigan, the elements of an intentional infliction of emotional distress claim are: (1) extreme or outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Webster v. United Auto Workers, Local 51*, 394 F.3d 436, 442 (6th Cir. 2005). "In ruling on such a claim, it is initially for the trial court to determine whether the defendant's conduct reasonably may be regarded as so extreme and outrageous as to permit recovery." *Id.*

The Court finds that the alleged conduct of Defendants Fechik and Kelso (fabricating a charge of driving on a suspended license) may constitute extreme and outrageous conduct that was intentional (because the LEIN investigation report indicated that Plaintiff's license was not suspended) and the cause of Plaintiff's injuries (which included being detained, incurring unreimbursed costs, having to go to court twice, and other indignities). The average member of the community would have a resentment against the Defendant officers that would lead such community member to exclaim that the officers' conduct was outrageous. *Lewis v. LeGrow*, 258 Mich.App. 175, 196 (2003). For the same reasons discussed with regard to the malicious prosecution claim, governmental immunity does not bar Plaintiff's intentional infliction of emotional distress claim. The Court denies the Motion to Dismiss with respect to Count V.

**D.      Gross Negligence - Count VI**

Under Michigan law, an employee of a governmental agency is immune from a tort sounding in negligence if: (a) the governmental agency was discharging a governmental function; (b) the employee was acting on behalf of the agency; (c) the employee was acting (or believed he was acting) in the scope of his authority; and (d) the employee's "conduct does not amount to gross negligence that is the proximate cause of the injury or damage." M.C.L. § 691.1407(2); *see also Odom*, 760 N.W.2d at 228 and *Scott v. City of Port Huron*, No. 15-11773, 2017 WL 877317, at *12 (E.D. Mich. Mar. 6, 2017). Michigan's governmental-immunity statute defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." M.C.L. § 691.1407(8).

In this case, Plaintiff has alleged that intentional wrongdoing by Defendants Fechik and Kelso caused Plaintiff's injuries. The Court concludes Plaintiff has satisfied his burden of pleading that Defendants engaged in conduct that amounts to gross negligence (as Plaintiff has alleged that they intentionally lied to create a basis to detain him and search and confiscate his vehicle), and that their conduct was the proximate cause of his injury and damages. The Court denies the Motion to Dismiss Count VI.

### E.   *Monell* Claim - Count VII

A municipal defendant can only be subject to direct liability if it causes a constitutional violation and harm to the plaintiff because it "implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by" that body's officers. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983." *Id.* at 694. A plaintiff cannot allege a viable claim based solely on vicarious liability or *respondeat superior*. *Id.* at 691. The municipality's policy (or absence of one) must be a "moving force" in the deprivation of the plaintiff's constitutional rights and such policy must have arisen from "deliberate indifference" to the rights of its citizens. *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996).

In addition to policy or custom, the inadequacy of police training may serve as a basis for Section 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. *Canton v. Harris*, 489 U.S. 378, 388 (1989). The question is "whether the training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent 'city policy.'" *Id.* at 390.

Defendants argue that Plaintiff does not allege any wrongful conduct regarding the traffic stop, brief detention, or vehicle impoundment. Defendants suggest that Plaintiff alleges that the City is constitutionally liable because the City did not respond to or resolve his formal written complaint <u>after</u> the incident. (Citing Complaint at ¶ 90). Defendants contend that the allegations that the City has a policy or custom of "inadequately and improperly investigat[ing] citizen complaints" are wrong and do not give rise to *Monell* liability.

Plaintiff contends that his allegations are sufficient, specifically citing the following language:

> It could be inferred that it was the policy and/or custom of the CITY of ANN ARBOR to inadequately and improperly investigate citizen complaints of police misconduct, and these acts were instead tolerated by the CITY OF ANN ARBOR, including, but not limited to Plaintiff's complaint concerning not receiving any meaningful correspondence from the CITY OF ANN ARBOR after submitting a written complaint directly to the CITY OF ANN ARBOR . . .

[Complaint at ¶ 94] The Court notes that Plaintiff also alleged that the "past act or acts of the final policymaker [the City] were a direct and proximate cause of Plaintiff's damages and injuries complained of herein, by not effectively albeit [sic] ignoring written complaint(s) made by Plaintiff <u>and victims of police misconduct</u> resulting in Constitutional violations committed by officers of the CITY OF ANN ARBOR due

to unaccountability, which could tend to a culture of lawlessness within the Ann Arbor Police Department." *Id.* at ¶ 91 (emphasis added).

At the pleading stage of this case, the Court determines that Plaintiff has sufficiently alleged a *Monell* claim and denies Defendants' Motion to Dismiss Count VII of the Complaint.

## IV. CONCLUSION

For the reasons stated above,

IT IS ORDERED that Defendants' Motion to Dismiss [Dkt. No. 9] is **DENIED**.

IT IS ORDERED.

                        S/Denise Page Hood
                        Denise Page Hood
                        Chief Judge, United States District Court

Dated: February 7, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 7, 2018, by electronic and/or ordinary mail.

                        S/LaShawn R. Saulsberry
                        Case Manager